## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| DATAONLINE, L.L.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | |
| | : | |
| | : | |
| LOUIS TREBAOL | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### COMPLAINT

Plaintiff DataOnline, L.L.C., also known as Anova ("Anova" or "Plaintiff"), by its undersigned attorney, alleges as follows against Defendant Louis Trebaol ("Louis" or "Defendant"):

### NATURE OF SUIT

1.    This is an action by Anova, trusted innovator and leader in remote monitoring of industrial assets, against its former employee, Defendant, that arises out of Defendant's breach of express and implied contracts for refusing to provide the necessary information to verify their claims of inventorship and, if required, to assign their rights in U.S. Provisional Patent Application No. 63/040,759 ("'759 Application"), U.S. Non-Provisional Patent Application No. 17/350,766 ("'766 Application"), and Patent Cooperation Treat Patent Application No. PCT/US21/38040 ("'040 Application") (collectively, "Anova Applications") to Anova.

2.    By this action, Anova seeks injunctive relief and monetary damages to remedy a former employee's acts of breach of express contracts, breach of implied contract, breach of

1

implied covenant of good faith and fair dealing, promissory estoppel, specific performance to compel assignment declaratory judgement, and transfer of ownership. Anova further seeks a declaration that all rights, title, and interest in and to the Anova Applications is the property of Anova, and an order requiring Defendant to execute an assignment to Anova of all rights to the Anova Applications.

## THE PARTIES

3.    Plaintiff, DataOnline, L.L.C., is a New Jersey limited liability company having its principal place of business located at 210 South Street, New Providence, New Jersey, 07974.

4.    Upon information and belief, Defendant is an individual who resides at 54 Brick Mill Road, Bedford, New Hampshire, 03110. Louis is a former employee of Anova.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 excluding interests and costs, and there is complete diversity of citizenship between the Plaintiff and the Defendant. Plaintiff  is wholly owned by DataOnline, Corp. Pursuant to 28 U.S.C. § 1338, DataOnline, Corp. has Delaware and New Jersey citizenship because it was incorporated in Delaware and has its principal place of business in New Jersey. DataOnline, LLC has New Jersey and Delaware citizenship because it is a limited liability company and its citizenship is determined by the citizenship of its sole member, DataOnline Corp. Upon information and belief, Louis is a citizen of New Hampshire.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because both Plaintiff and Defendant expressly agreed in Section 6.5 of the TankClarity Assignment Agreement (defined below) to bring any proceeding or action arising out of the in any federal or state court in the State of New York. *See* Exhibit D.

2

## FACTUAL BACKGROUND

7.   Anova is a trusted innovator and leader in remote monitoring of industrial assets and has been recognized by IoT Breakthrough, a leading market intelligence organization, for their innovations related to advanced forecasting of unmonitored stores/tanks.

8.   Anova created the "Conductor" project to find a solution to delivery and monitoring inefficiencies of asset-holding tanks discovered upon analysis of Anova's customer accounts, motivations, and behaviors. *See* Exhibit A at 9.

9.   Anova's Conductor project was tasked with creating new applications, products, and services, specifically for value-added data services, workflow improvements, and efficiency services.

10.   On December 27, 2018, before Louis was hired, Chet Reshamwala, Anova's former Chief Executive Officer, corresponded with Louis and described the goal of Anova, which is to "build a Data Solutions center of excellence related to the markets we are in to further differentiate DataOnline in the IIoT Space. In the early days, this role will be less operationally focused, and more strategically focused on building out the differentiating value drivers." *See* Exhibit B.

11.   On January 7, 2019, Louis signed an offer employment with Anova for the role of "Business Development, Data Solutions" on January 7, 2019. *See* Exhibit C.

12.   For his work, Louis was compensated with a base salary of $190,000 USD with the potential for bonus compensation. *See* Exhibit B; *see also* Exhibit C.

13.   Louis co-owned a company named TankClarity, LLC, which was in the business of developing technology related to tank classification and route generation. *See* Exhibit B at 9.

14.   Anova was interested in purchasing the intellectual property of TankClarity, LLC, and contacted Louis to express their interest. *See* Exhibit B at 10.

15. On or about January 11, 2019, TankClarity, LLC assigned all its intellectual property to Anova in exchange for a significant monetary payment via an assignment agreement, which Louis signed as an assignor equity holder of TankClarity, LLC ("TankClarity Assignment Agreement"). *See* Exhibit D.

16. On January 28, 2019, Louis commenced his employment with Anova. *See* Exhibit C.

17. On January 29, 2019, Louis signed an employment agreement with Anova. *See* Exhibit E.

18. On October 16, 2019, Louis' brother, Theodore Trebaol ("Ted") signed an offer of employment with Anova for the role of "Technical Product Owner." *See* Exhibit F.

19. On November 4, 2019, Ted commenced his employment with Anova. *See* Exhibit F.

20. On May 5, 2020, Louis, with Ted carbon copied, emailed Paul Gregory, general counsel for Anova, stating, "Hi Paul, [w]e spoke back in December about the **Conductor project at Anova**. We have an invention that we wanted to file an invention disclosure **for out of the project** that could be a major game changer for the tank monitoring industry." See Exhibit G (emphasis added).

21. On May 28, 2020, Louis, with Ted carbon copied, communicated by email with Chet Reshamwala and Paul Gregory. In this correspondence, Louis and Ted asked for approval to move forward with pursuing intellectual property protections for the invention disclosed in the '759 Application on behalf of Anova. *See* Exhibit H at 4.

22. On May 19, 2020, Anova approved the request. *See* Exhibit H at 2.

23. Louis and Ted directed the prosecuting patent attorney. Mr. Stephen Finch, to file the '759 Application, entitled "Method and System for Accurately Estimating Amount of Materials in Stores." on June 18, 2020, naming Louis and Ted as inventors. *See* Exhibits I, J, and K.

4

24.   At the direction of Louis and Ted, the '759 Application named Anova, Inc. as the Applicant and Assignee, and indicated that Anova, Inc. is a person to whom the inventors are obligated to assign. *See* Exhibit J at 6.

25.   The '759 Application is directed to systems and methods "for providing more accurate models of the inventory levels of unmonitored stores. According to some embodiments, methods described herein combine high-fidelity monitored stores data … with manual stores data and generates accurate high-fidelity level estimates of manual stores to maximize the efficiency of managing all of the stores." *See* Exhibit K, para. [0009].

26.   On June 19, 2020, the day after the filing of the '759 Application, Louis wrote an email to Paul Gregory, with a carbon copy to Ted stating "[o]ne of the things that Ted and I need to do now is to assign the patent to Anova." See Exhibit L.

27.   On June 19, 2020, Ted wrote an email to Chet Reshamwala, and his supervisor Diamantino Costa, with a carbon copy to Louis, that he and Louis would assign the '759 Application to Anova, stating, "Louis and I be will (sic) signing forms to assign this to Anova." See Exhibit M.

28.   The unexecuted assignment agreement was prepared by Finch & Maloney under the direction of Louis and Ted, attached herewith as Exhibit N.

29.   Louis' role as an employee hired to invent is evidenced by his Notice of Performance Improvement Plan, dated August 26, 2020, in which his supervisor, Diamantino Costa communicated to Louis, "During the past 6 weeks from July 9th forward, it has became (sic) increasingly evident that you have not been performing your assigned work in accordance with what is expected of your position as Data Solutions Manager and your role as Conductor

Product/Project Manager … I learned that it is still much more of a vision than a product ready for proof-of-concept." *See* Exhibit A at 2.

30. On June 17, 2021, the '766 Application, entitled "Method and System for Accurately Estimating Amount of Materials in Stores," was filed. *See* Exhibits P and R.

31. The '766 Application claims priority to the '759 Application and names Sourav Dey, Joshua Hayes, Louis Trebaol, and Theodore Trebaol as the inventors. *See* Exhibit Q at 2-3, 5.

32. The Applicant of the '766 Application is DataOnline, L.L.C. as a person who shows sufficient proprietary interest. *See* Exhibit Q at 7.

33. The '766 Application is directed to a complex method and system of estimating status, level, or consumption rates of units in storage or inventory for unmonitored stores using a combination of high-fidelity monitored stores data with manual stores data to generate high-fidelity level estimates of manual stores to replace the need to install sensors on every store. *See* Exhibit R, para. [0029].

34. The inventions disclosed in the Anova Applications disclose virtual monitoring of tank levels and the optimization of consumer logistics and specifically reference Anova's "Virtual Tank Monitor," which is commercially offered by association with Anova's Unify™ Software. *See* Exhibit R, para. [0070]; *see also* Exhibit S; *see also* Exhibit V.

35. On February 9, 2023, Sourav Dey and Joshua Hayes assigned their rights to the Anova Applications to Anova. *See* Exhibit T.

36. Anova paid for the patent attorney fees in the prosecution of the Anova Applications and expended a significant budget to prosecute the Anova Applications and the design, manufacture, and marketing of the products associated with the Anova Applications.

6

37.   To this day, Defendant refuses to assign their rights, if any, in the Anova Applications to Anova, refuses to sign the Inventor Declaration form in compliance with 37 C.F.R. § 1.63 (the "Anova Application Declarations"); and refuses to provide the information that Anova requires to verify whether Ted is an inventor of the Anova Applications.

38.   Anova is simultaneously filing an action against Ted seeking: injunctive relief and monetary damages to remedy Ted's breach of his implied-in-fact contract and his breach of implied covenant of good faith and fair dealing; promissory estoppel; specific performance; transfer of ownership of the Anova Applications; a declaration that all rights, title, and interest in and to the Anova Applications are the property of Anova; and an order requiring Defendant to execute an assignment to Anova of all rights to the Anova Applications.

## COUNT I

### (Breach of Express Contract – TankClarity Assignment Agreement)

39.   Anova repeats and realleges the allegations of Paragraphs 1 through 38 hereof as if the same were fully set forth herein.

40.   The TankClarity Assignment Agreement exists between, and was executed by, Anova, TankClarity, LLC, and Defendant and Gregory Hovagim, as individuals and Assignor Equityholders. *See* Exhibit D.

41.   Section 2.2 of the TankClarity Assignment Agreement imposes a duty on Louis as follows:

> Documentation and Cooperation. Assignor hereby agrees to cooperate with Assignee by taking all actions reasonably requested by Assignee, at Assignee's expense, to assist Assignee in obtaining and enforcing proprietary protection for the Intellectual Property Rights. Assignee **shall execute all documents which Assignee shall reasonably request in connection with the protection of the Intellectual Property Rights**. Assignor hereby appoints Assignee his agent to execute and deliver any such documents on his behalf in the event Assignor should fail or refuse to do so within a reasonable period following

Assignee's request…(the "Section 2.2 Duty"). *See* Exhibit D, Section 2.2 (emphasis added).

42. Section 5.1 of the TankClarity Assignment Agreement imposed a duty on Louis as follows:

> Each Assignor Equityholder and the Assignor acknowledges (x) that from and after the date hereof, Assignee and its current and future affiliates and subsidiaries engage in, and/or will engage in, the business of providing remote monitoring solutions, products and services for industrial and commercial assets (collectively, the "Designated Business"), which include the designing, manufacturing, marketing, selling, servicing, provision, distribution and development of the products or services that are manufactured, marketed, sold, distributed and developed by the Assignee and its affiliates as of the date hereof, and (y) that engagement by Assignor or any Assignor Equityholder in the Designated Business anywhere within the United States of America or Canada (except, if applicable, with respect to any Assignor Equityholder's performance as an officer of employee of any member for Assignee or any of
> its affiliates) would cause the Assignee irreparable damage …To induce [Anova] to enter into the transactions contemplated herein, Assignor and each Assignor Equityholder hereby agrees that during the five-year period following the date hereof, such person will not … operate, engage in, manage, control, invest in … or participate in any manner in, act as a consultant or advisor to, or **otherwise assist any person that engages in or owns, invests in, operates, manages or controls any venture or enterprise that directly or indirectly engages in or proposes to engage in the Designated Business** anywhere within the United States of America or Canada" (the "Section 5.1 Duty"). *See* Exhibit D, Section 5.1 (emphasis added).

43. Defendant has breached the Section 2.2 Duty and Section 5.1 Duty by refusing to assign the Anova Applications to Anova and proposing to personally engage in, and assist Ted in engaging in, the Designated Business on his and Ted's personal behalf by licensing the rights to the Anova Applications without the consent of Anova.

44. Anova performed its obligation under the TankClarity Assignment Agreement through its payment of fifty thousand dollars ($50,000).

45. Anova provided Defendant a first assignment agreement on June 18, 2020, which he refused to execute.

8

46.   Anova provided Defendant with a second assignment agreement on June 11, 2021 (the "Anova Applications Assignment"), which he also refused to execute.

47.   The Anova Applications disclose inventions relating to the business of providing remote monitoring solutions, products and services for industrial and commercial assets, and its associated products  are manufactured, marketed, sold, distributed and developed by Anova. *See* Exhibit S; *see also* Exhibit V.

48.   In refusing to assign his rights, if any, to Anova for the Anova Applications, Defendant is assisting himself and Ted, not Anova, and is therefore in breach of both his Section 2.2 Duty and Section 5.1 Duty.

49.   Anova is damaged by this breach in that it does not currently hold exclusive title to the Anova Applications and has been forced to expend time and money to bring this litigation in an effort to gain exclusive ownership and control of the Anova Applications, to compel Defendant to sign the necessary prosecution and assignment documents, and to cease Defendant's efforts to engage in the Designated Business in violation of his Section 5.1 Duty.

50.   Anova has no adequate remedy at law.

51.   An injunction requiring Defendant to sign the Anova Applications Assignment in accordance with his duties under the TankClarity Assignment Agreement would cause minimal possibility of harm to Defendant when weighed against the harm, to Anova in the absence of an injunction, because, among other things, Defendant has no lawful right of ownership in the Anova Applications.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Louis Trebaol:

A.  Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B.  Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C.  Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D.  Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E.  Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F.  Granting such other relief as the Court deems fair and equitable.

## COUNT II

### (Breach of Express Contract – Employment Agreement)

52.  Anova repeats and realleges the allegations of Paragraphs 1 through 51 hereof as if the same were fully set forth herein.

53.  An employment agreement existed between Defendant and Anova, which was executed by Defendant on January 29, 2019. *See* Exhibit E.

54.  Section 1.2 of the employment agreement imposed a duty on Defendant that he shall "at all times serve and promoted the best interest of the Company, at determined by the Company's management, and shall act with undivided loyalty to the Company in carrying our his or her employment duties." *See* Exhibit E at 2.

55.  Section 3 of the employment agreement imposed a duty on Louis as follows:

10

**Assignment of Development.**  Employee agrees to disclose promptly and fully to the Company and to no one else: (1) all inventions, ideas, improvements, discoveries, works modifications, processes, software programs, works of authorship, documentation, formulae, techniques, designs, methods, trade secrets, technical specifications and technical data, know-how and show-how, concepts, expressions or other developments whatsoever or any interest therein (whether or not patentable or registrable under copyright, trademark, patent or similar statutes or subject to analogous protection) made, authored, devised, developed, discovered, reduced to practice, conceived or otherwise obtained by Employee ("Developments"), solely or jointly with others, during the course of Employee's employment with the Company which (a) are related to the business of the Company or any of the products or services being developed, manufactured or sold by the Company or which may be used in relation therewith or (b) result from tasks assigned to Employee by the Company; (ii) any Development which is related to the business of the Company and in which Employee had an assignable interest at the time of Employee's first employment by the Company; and (iii) any Development made using the Company's time, materials or facilities, even if such Development does not relate to the business of the Company. The determination as to whether a Development is related to the business of the Company shall be made solely by authorized representative of the Company and not Employee.  *See* Exhibit E at 4.

56.  Defendant has breached the Section 1.2 Duty and Section 3 Duty by not assigning Developments to Anova pursuant to employment agreement with Anova.

57.  Anova performed its obligation under the employment agreement through its compensation to Defendant in the form of the $190,000 USD salary.

58.  Anova is damaged by this breach in that it does not currently hold exclusive title to the Anova Applications and has been forced to expend time and money to bring this litigation in an effort to gain exclusive ownership and control of the Anova Applications.

59.  Anova has no adequate remedy at law.

60.  An injunction requiring Defendant to sign the Anova Applications Assignment in accordance with his duties under his employment agreement would cause minimal possibility of harm to Defendant when weighed against the harm, to Anova in the absence of an injunction, because, among other things, Defendant has no lawful right of ownership in the Anova Applications.

WHEREFORE, plaintiff DataOnline, L.L.C., demands judgement against Defendant Louis Trebaol:

A. Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B. Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C. Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D. Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E. Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F. Granting such other relief as the Court deems fair and equitable.

## COUNT III

### (Breach of Implied-In-Fact Contract)

61. Anova repeats and realleges the allegations of Paragraphs 1 through 60 hereof as if the same were fully set forth herein.

62. In addition to the express agreements referenced elsewhere in this Complaint, there was also an implied-in-fact contract requiring Defendant to assign any rights that he may have had in the inventions disclosed and claimed in the Anova Applications to Anova.

63. Defendant was employed by Anova for the specific purpose of inventing new monitoring technologies, reducing them to practice, and creating viable products therefrom for

Anova including improvements to Anova's existing technology. Defendant was specifically assigned to lead Anova's Conductor project as Conduct Product/Product Manager. *See* Exhibit A; *see also* Exhibit O.

64.   As a result of his endeavors with Anova's Conductor Project, and in his role as an employee for Anova, Defendant allegedly co-invented the virtual tank monitoring ("VTM") technology disclosed in the '759 Application, for which he asked Anova for permission to patent the work that came "out of the Conductor project." *See* Exhibit G; *see also* Exhibit H.

65.   Anova approved the filing of, and paid for the legal work associated with, the '759 Application and subsequent Anova Applications.

66.   Anova provided Defendant a first assignment agreement on June 18, 2020, which he refused to execute.

67.   Anova provided Defendant with a second assignment agreement on June 11, 2021 (the "Anova Applications Assignment"), which he also refused to execute.

68.   Anova provided Defendant with declarations on March 29, 2024, which he refused to execute, through his attorney Michael Schack.

69.   In refusing to execute the Anova Application Declaration and Anova Application Assignment and refusing to provide the necessary information to verify his claims of inventorship, Louis breached the duties of their implied-in-fact contract with Anova.

70.   Anova performed its obligations under this implied-in-fact contract through payment of Louis in the amount of $190,000 base salary starting January 28, 2019, through November 20, 2020.

71. Anova is damaged by this breach in that it does not currently hold exclusive title to the Anova Applications and has been forced to expend time and money to bring this litigation in an effort to gain exclusive ownership and control of the Anova Applications.

72. Anova has no adequate remedy at law.

73. An injunction requiring Defendant to sign the Anova Applications Assignment in accordance with his duties under the implied-in-fact contract would cause minimal possibility of harm to Defendant when weighed against the harm, to Anova in the absence of an injunction, because, among other things, Defendant has no lawful right of ownership in the Anova Applications.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Louis Trebaol:

A.  Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B.  Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C.  Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D.  Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E.  Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F.  Granting such other relief as the Court deems fair and equitable.

## COUNT IV

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

74. Anova repeats and realleges the allegations of Paragraphs 1 through 73 hereof as if the same were fully set forth herein.

75. Defendant was employed by Anova by an express contract via at least Louis's executed employment agreement and offer letter. *See* Exhibit C; *see also* Exhibit E; *see also* Exhibit F.

76. The terms Defendant's employment at least implied the obligation for Defendant to assign all inventive rights to Anova for inventions created for the purposes of his employment, as Defendant was hired specifically for his inventive capabilities, as evidenced by, at a minimum, his performance reviews. *See* Exhibit A; *see also* Exhibit O.

77. If the Court finds that Defendant acted consistent with his contracts with Anova, Defendant's conduct nevertheless violated the implied covenant of good faith and fair dealing. *See Gap Props., LLC v. Cairo*, 2020 U.S. Dist. LEXIS 174770 at *11-15 (D.N.J. Sep. 17, 2020).

78. Anova is damaged by this breach in that it does not currently hold exclusive title to the Anova Applications and has been forced to expend time and money to bring this litigation in an effort to gain exclusive ownership and control of the Anova Applications.

79. Anova has no adequate remedy at law.

80. An injunction requiring Defendant to sign the Anova Applications Assignment in accordance with his duties under the covenant of good faith and fair dealing would cause minimal possibility of harm to Defendant when weighed against the harm, to Anova in the absence of an injunction, because, among other things, Defendant has no lawful right of ownership in the Anova Applications.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Louis Trebaol:

 A. Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

 B. Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

 C. Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

 D. Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

 E. Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

 F. Granting such other relief as the Court deems fair and equitable.

## <u>COUNT V</u>
### (Promissory Estoppel)

81. Anova repeats the allegations of Paragraphs 1 through 80 of the Complaint and incorporates them herein by reference.

82. Defendant made a clear and definite promise to Anova to assign any and all ownership interest in the Anova Applications to Anova.

83. The promise was made with the expectation that Anova would rely on Defendant's promise.

84. Defendant knew or should have known that Anova would be reasonably induced to rely on Defendant's promise.

85.  Anova reasonably and foreseeably relied to its detriment on the representation by Defendant that he would assign any and all ownership interest in the Anova Applications and that Plaintiff would expend significant resources to prosecute the Anova Applications.

86.  Defendant has not performed his promise or adhered to his representations.

87.  As a direct and proximate result of defendant's failure to perform according to the promise and representations which it had made, Plaintiff has and will sustain damages.

88.  Since Plaintiff reasonably and foreseeably relied on defendant's promise to its detriment, Defendant is liable for the losses caused to Plaintiff.

89.  Anova is damaged by its reliance on the representation by Defendant in that it does not currently hold exclusive title to the Anova Applications and has been forced to expend time and money to bring this litigation in an effort to gain exclusive ownership and control of the Anova Applications.

90.  Anova has no adequate remedy at law.

91.  An injunction requiring Defendant to sign the Anova Applications Assignment in accordance with his duties under promissory estoppel would cause minimal possibility of harm to Defendant when weighed against the harm, to Anova in the absence of an injunction, because, among other things, Defendant has no lawful right of ownership in the Anova Applications.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Louis Trebaol:

  A.  Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B.  Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C.  Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D.  Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E.  Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F.  Granting such other relief as the Court deems fair and equitable.

## <u>COUNT VI</u>

### (Specific Performance to Compel Assignment)

92.  Anova repeats and realleges the allegations of Paragraphs 1 through 91 hereof as if the same were fully set forth herein.

93.  Defendant offered to assign any and all ownership interest in the Anova Applications to Plaintiff in exchange for Anova's approval and resources to prosecute the Anova Applications.

94.  In reliance of Defendant's promise, Plaintiff expended significant resources in Defendant's salary and benefits in addition to the resources associated with the research, development, marketing, and prosecution of the Anova Applications and underlying technology and products.

95.  Plaintiff has duly performed all of the conditions and obligations on its part to be performed, and Plaintiff has at all times been ready, willing and able to perform pursuant the verbal contract by paying $190,000.00 and related benefits for Defendant's employment and prosecuting the Anova Applications on behalf of Defendant.

96. Defendant wrongfully and improperly refused to perform in accordance with the verbal contract, in breach of Plaintiff's rights thereunder, all to Plaintiff's damage.

97. Plaintiff has no adequate remedy at law.

98. An injunction requiring Defendant to sign the Anova Applications Assignment in accordance with the verbal contract would cause minimal possibility of harm to Defendant when weighed against the harm, to Anova in the absence of an injunction, because, among other things, Defendant has no lawful right of ownership in the Anova Applications.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Louis Trebaol:

A.      Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B.      Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C.      Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D.      Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E.      Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F.      Granting such other relief as the Court deems fair and equitable.

## <u>COUNT VII</u>
### (Declaratory Judgement)

99.  Plaintiff repeats and realleges the allegations of Paragraphs 1 through 98 hereof as if the same were fully set forth herein.

100. The parties' dispute with respect to Defendant's obligation to assign any and all ownership interest in the Anova Applications, presents an actual controversy within the meaning of 28 USC § 2201.

101. By reason of the foregoing, Plaintiff is entitled to a declaratory judgment that Defendant is obligated to assign any and all ownership interest in the Anova Applications to Anova.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Theodore Trebaol:

A.  Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B.  Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C.  Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D.  Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E.  Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F.  Granting such other relief as the Court deems fair and equitable.

## COUNT VIII
### (Transfer of Ownership of the Anova Applications)

102. Anova repeats and realleges the allegations of Paragraphs 1 through 101 hereof as if the same were fully set forth herein.

103. Defendant has not executed an assignment of rights with respect to the Anova Applications.

104. The concepts disclosed within the Anova Applications were conceived, made, created, developed, or written during Defendant's employment by Anova.

105. The concepts disclosed within the Anova Applications were conceived, made, created, developed, or written using Anova's resources, including Anova's facilities, supplies, and/or confidential information.

106. The concepts of the Anova Applications were within the scope of kinds of research and concepts Defendant was hired and employed to develop and therefore belong to Anova.

107. The Anova Applications should be formally assigned to Anova by Defendant.

**WHEREFORE**, plaintiff DataOnline, L.L.C., demands judgement against Defendant Theodore Trebaol:

A. Enjoining Defendant from using or disclosing Anova's confidential and proprietary information to third-parties without the prior written consent of Anova including all confidential and proprietary information related to the Anova Applications;

B. Granting injunctive relief requiring Defendant to assign any and all ownership interest in the Anova Applications;

C. Granting injunctive relief required Defendant to execute an inventor declaration in compliance with 37 C.F.R. § 1.63;

D.  Granting injunctive relief requiring Defendant to cease and desist all efforts to sell, or assist in selling, a license to the Anova Applications to any third party;

E.  Awarding Anova Monetary damages in an amount to be proved at trial, including pre-judgement and post-judgement interest thereon, and attorneys' fees; and

F.  Granting such other relief as the Court deems fair and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Anova, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury on any and all claims so triable by right.


Dated: May 21, 2024

By: */s/ Rita C. Chipperson*_____
Rita C. Chipperson (No. 54031)
Chipperson Law Group, P.C.
163 Madison Avenue, Suite 220-40
Morristown, New Jersey 07960
973-845-9071
rcc@chippersonlaw.com

By: */s/ Kevin J. O'Connor*
Kevin J. O'Connor
**PECKAR & ABRAMSON, P.C.**
1325 Avenue of the Americas
10th Floor
New York, New York 10019
212-382-0909
koconnor@pecklaw.com
*Attorneys for Plaintiff*
*DataOnline, L.L.C.*